**XI PROPERTIES, INC., Larry W. Nichols, and Jimmy C. Stout**

v.

**RACETRAC PETROLEUM, INC.**

Supreme Court of Tennessee, at Nashville.

Oct. 2004 Session.

Dec. 16, 2004.

Todd A. Rose, Paris, Tennessee, and John E. Acuff, Cookeville, Tennessee, for the appellant, RaceTrac Petroleum, Inc.

Peter H. Curry, Nashville, Tennessee, for the appellees, XI Properties, Inc., Larry W. Nichols, and Jimmy C. Stout.

## OPINION

WILLIAM M. BARKER, J., delivered the opinion of the court, in which the panel of FRANK F. DROWOTA, III, C.J., and E. RILEY ANDERSON, JANICE M. HOLDER, JJ. and ALLEN W. WALLACE, Sp.J., joined.

We granted this appeal to address whether a landowner has a duty to provide lateral support to adjoining land that has been altered from its natural state. In a case of first impression for this Court, we hold that no such duty is owed. We conclude that the duty to provide lateral support encompasses only the naturally necessary support of adjoining land in its natural state. The trial court granted plaintiffs' motion for summary judgment on this issue, concluding, as do we, that the duty to provide lateral support did not extend to adjoining land that had been altered or improved. Therefore, as both the plaintiffs' and defendant's property in question had been altered from its natural state, the trial court concluded that the plaintiffs had no duty to replace the lateral support of the improved portion of the defendant's property when the plaintiffs made excavations. The Court of Appeals affirmed but further held that the plaintiffs could not negligently excavate the property. We granted permission to appeal in order to clarify the law on this issue. For the reasons stated herein, the judgment of the Court of Appeals is affirmed.

## I. Facts and Procedural History

The defendant, RaceTrac Petroleum, owned a parcel of land in Cookeville, Tennessee, which included a gas station, an adjoining parking lot, and an additional 3.221 acres of unimproved land. While constructing the gas station and parking lot on the property, the defendant added fill dirt to level an area for the parking lot and to create a sloped embankment to support the sides of the parking lot. Subsequent to these improvements, in 1993, the defendant sold the 3.221 acre portion of the property to the plaintiffs. However, due to a mistake in the deed, the defendant inadvertently conveyed the sloped embankment and a portion of the parking lot to the plaintiffs. This discrepancy went unnoticed until 1999, when the plaintiffs began making preparations to develop their property. After discovering that the property boundary line was slightly different than originally believed, the plaintiffs determined that their development plans would require removal of a portion of the sloped embankment supporting the defendant's parking lot. The plaintiffs sent a letter to the defendant, advising it of these plans and requesting that arrangements be made to deal with the proposed alterations to the property. The defendant objected to the plans, giving rise to the current dispute.

The plaintiffs filed a declaratory judgment action seeking the trial court's clarification of the parties' rights and responsibilities in the matter. Both parties subsequently filed motions for summary judgment.[1] Upon consideration of the

---

1. The defendant, RaceTrac Petroleum, moved for summary judgment arguing that it had adversely possessed the portion of the property in question for seven years following the conveyance to the plaintiffs. Therefore, the defendant asserted that it could rely upon

Tennessee Code Annotated section 28–2–103 (2000) as a defense to the plaintiffs' action. Section 28–2–103 (2000) bars any action for recovery of property after seven years of adverse possession. The trial court denied summary judgment on this issue, concluding that

motions, the trial court concluded that the plaintiffs had a duty to provide naturally necessary lateral support to the adjoining land. However, the duty was only that of naturally necessary support and did not extend to property that had been altered and now required additional support. The defendant's land was not in its natural condition, having been altered by the addition of fill dirt when the parking lot and embankment were constructed. Therefore, the trial court granted the plaintiffs' motion for summary judgment, declaring that the plaintiffs owed a duty of lateral support only with respect to that portion of the land still in its natural state. Accordingly, the plaintiffs could excavate the sloped embankment down to the point where it became land in its natural state, without owing any duty of support to the defendant's adjoining property. The Court of Appeals affirmed the granting of summary judgment on this issue, but added the caveat that the plaintiffs could not negligently excavate the sloped embankment. We granted permission to appeal in order to clarify the law regarding the duty to provide lateral support to adjoining landowners.

## II. Standard of Review

 The purpose of summary judgment is to resolve controlling issues of law rather than to find facts or resolve disputed factual issues. *Bellamy v. Fed. Express Corp.,* 749 S.W.2d 31, 33 (Tenn.1988). Summary judgment is appropriate only when the moving party demonstrates (1) that there are no genuine issues of material fact and (2) that he or she is entitled to judgment as a matter of law. *See* Tenn.

R. Civ. P. 56.04; *Penley v. Honda Motor Co.,* 31 S.W.3d 181, 183 (Tenn.2000); *Byrd v. Hall,* 847 S.W.2d 208, 210 (Tenn.1993). Because this inquiry involves purely a question of law, the standard for reviewing a grant of summary judgment is de novo with no presumption of correctness attached to the trial court's conclusions. *See Mooney v. Sneed,* 30 S.W.3d 304, 306 (Tenn.2000); *Carvell v. Bottoms,* 900 S.W.2d 23, 26 (Tenn.1995). In reviewing the record, an appellate court must view all the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of the non-moving party. *Staples v. CBL & Assocs., Inc.,* 15 S.W.3d 83, 89 (Tenn.2000).

## III. Analysis

The primary issue presented by this case is whether a landowner has a duty to provide lateral support to adjoining land that has been altered from its natural state. Although the law regarding the right to lateral support from adjoining land appears well-settled in many jurisdictions, this is an issue of first impression in this Court. As a related matter, we also take this opportunity to clarify the law regarding the rights and duties of landowners when making improvements to their own property.

With respect to the issue of lateral support, the plaintiffs argue that the Court should adopt the generally accepted rule that a landowner owes a duty of lateral support only to adjoining land in its natural state and only to the extent that the support is naturally necessary. This duty of lateral support should not apply to improved or altered land that requires addi-

the defendant had not adversely possessed the property. Upon appeal, the Court of Appeals reversed, holding that the defendant could be considered an adverse possessor of the property, and therefore remanded the matter back

to the trial court for further proceedings on this issue. We subsequently denied the plaintiffs' application for permission to appeal this issue in this Court.

tional lateral support due to the alterations. Therefore, the plaintiffs assert that it is the defendant's responsibility to replace the support that will be removed as the plaintiffs excavate the property in question. In response, the defendant argues that it is entitled to continued lateral support from the plaintiffs because the plaintiffs purchased the property "as is," which included maintaining the support provided to the defendant's property by the embankment. Therefore, should the Court endorse the rule that land in its natural state is entitled to all naturally necessary lateral support, then the Court should also conclude that the "natural state" of land be the condition of the land when subdivided.

### General Duty of Lateral Support to Adjoining Land

While this Court has not had occasion to address this issue, our Court of Appeals has previously done so, most notably in *Williams v. S. Ry. Co.*, 55 Tenn.App. 81, 396 S.W.2d 98 (1965). In *Williams*, the defendant railroad company had excavated its property in constructing a rail line in 1905. This excavation removed land alongside the plaintiff's property. In 1963, a landslide along the excavated bank caused the plaintiff's property to cave in. The Court of Appeals affirmed the trial court's judgment of liability against the railroad company, citing the general principle that

> every owner of land has the right to naturally necessary lateral support from the adjoining soil, and if a landowner removes the soil from his own land so near the land of his neighbor that his neighbor's soil will crumble away under its own weight, he is liable for damages naturally resulting therefrom, including damage to structures on the subsiding land, without the necessity of showing negligence....

*Id.* at 99–100. *Williams*, therefore, stands for the proposition that any excavation which causes adjoining, unimproved property to subside or collapse of its own weight will subject the excavator to strict liability for any resulting damages.

The reasoning expressed in *Williams* follows the traditional common law view that land in its natural state is entitled to lateral support from the adjoining land. *Myer v. Hobbs*, 57 Ala. 175, 1876 WL 1347 (1876); *Urosevic v. Hayes*, 267 Ark. 739, 590 S.W.2d 77, 78–79 (Ct.App. 1979); *Puckett v. Sullivan*, 190 Cal.App.2d 489, 493, 12 Cal.Rptr. 55 (1961); *Carrig v. Andrews*, 127 Conn. 403, 17 A.2d 520, 521 (1941); *Massell Realty Imp. Co. v. MacMillan Co.*, 168 Ga. 164, 147 S.E. 38, 39 (1929); *Levi v. Schwartz*, 201 Md. 575, 95 A.2d 322, 326 (1953); *Carrion v. Singley*, 614 S.W.2d 916, 917 (Tex.Civ.App.1981); *Stearns' Ex'r v. Richmond*, 88 Va. 992, 14 S.E. 847, 848 (1892); *Law v. Phillips*, 136 W.Va. 761, 68 S.E.2d 452, 457 (1952). Landowners who excavate or improve their land are compelled to do so in a manner that protects adjoining property in its natural state from collapsing or eroding away. *Olson v. Mullen*, 244 Minn. 31, 68 N.W.2d 640, 644 (1955); *Williams*, 396 S.W.2d at 99–100; *see also* 1 Am.Jur.2d *Adjoining Landowners* § 47; Restatement (Second) of Torts § 817 (1979). A landowner is not prohibited from excavating into the natural soil along a boundary line, but must replace by artificial means the natural support removed in the process. *Carrig*, 17 A.2d at 521; *Livingston v. Moingona Coal Co.*, 49 Iowa 369, 1878 WL 536 (1878). Strict liability attaches for damage caused by removing the naturally necessary lateral support of land in its natural state, with no proof of negligence required. *Green v. Berge*, 105 Cal. 52, 38 P. 539, 541 (1894); *Levi*, 95 A.2d at 326; *Morris v. Ostertag*, 52 Tenn.App. 561, 376

S.W.2d 720, 723–24 (1963); *Law*, 68 S.E.2d at 457–58; *see also* Restatement (Second) of Torts § 817 (1979).

■ While these principles hold true to land in its natural and unimproved state, they are not applicable to land that has been altered, such as by additions or construction, so as to require additional lateral support. *Olson v. Mullen*, 244 Minn. 31, 68 N.W.2d 640, 644 (1955); *Victor Mining Co. v. Morning Star Mining Co.*, 50 Mo.App. 525, 1892 WL 1893 (1892); *Williams*, 396 S.W.2d at 100; *Carrion*, 614 S.W.2d at 917; *see also* 1 Am.Jur.2d *Adjoining Landowners* § 40; Restatement (Second) of Torts § 817 cmt. e. (1979). Where, as here, a landowner alters his land by filling, thus raising the level of the land above its natural state, there is no right of lateral support from adjoining landowners with respect to the altered portion of the land. *Sime v. Jensen*, 213 Minn. 476, 7 N.W.2d 325, 327 (1942); *see also* Restatement (Second) of Torts § 817 cmt. c (1979) (stating that naturally necessary support "does not include the support needed because of the presence of artificial additions to ... the surrounding land"). It follows then, that landowners who raise their land above the natural level are under a duty to "keep the dirt from encroaching upon [their] neighbor's land." *Abrey v. City of Detroit*, 127 Mich. 374, 86 N.W. 785, 786 (1901); *see also Sime*, 7 N.W.2d at 327 (following the reasoning of *Abrey*). This duty includes, if necessary, the building of a retaining wall or other structure to protect the neighbor's land. *Abrey*, 86 N.W. at 786; *Hutchinson and Rourke v. Schimmelfeder*, 40 Pa. 396, 1861 WL 6074 (1861).

### Negligent Withdrawal of Lateral Support

■ As previously noted, no duty exists to provide additional lateral support to adjoining land that has been filled, raised or otherwise improved from its natural condition. *Sime*, 7 N.W.2d at 327. Nevertheless, if lateral support is provided to adjoining land containing improvements, such as buildings or other construction, this support cannot be removed in complete disregard of the adjoining landowner's interest. Although strict liability is not imposed in these circumstances, as would be the case when naturally necessary support of the land itself is removed, a landowner withdrawing lateral support of artificial additions to adjoining property is generally held to a reasonable care standard. *See, e.g., Law*, 68 S.E.2d at 457–58; *see also* Restatement (Second) of Torts § 819 (1979) (collecting cases). The Court of Appeals, in *Williams*, made mention of this rule of law, stating:

> It is where the subsidence of the property is due to the additional weight of buildings constructed thereon and not to the weight of the land in its natural condition that the person damaged must show that the excavator failed to use reasonable care in making and/or maintaining the excavation.

396 S.W.2d at 100. This duty to take reasonable precautions to avoid unnecessary, foreseeable harm to improved property derives from the notion of "requiring every owner of property so to use it as to not injure his neighbors' [property]." *Law*, 68 S.E.2d at 458.

The law in this respect attempts to strike a balance between the right of landowners to improve and to use their land, and the duty of landowners to avoid foreseeable harm to improvements on adjoining property. *See* Restatement (Second) of Torts § 819 cmt. e (1979). Factors relevant to the determination of whether a landowner is negligent in removing necessary lateral support of artificial additions include: the necessity of the excavation;

whether adequate notice was given to adjoining landowners; whether reasonable precautions were taken to prevent harm to adjoining property; whether competent workers were employed; and whether proper instrumentalities were used. *See id.* at cmts. e, f.

### Application to the Present Case

 In the case before us today, the land at issue had been filled above its natural level to create both the parking lot and the sloped embankment supporting the lot. The plaintiffs then acquired a portion of the property, including the embankment. Because the embankment does not support the adjoining land in its natural state, but instead supports only the improved portion of the land, the plaintiffs have no duty to maintain the embankment for the benefit of the defendant. *See Williams,* 396 S.W.2d at 99; *Sime,* 7 N.W.2d at 327. This is especially true in light of the fact that the defendant was the party who filled the area for the parking lot and created the embankment. The defendant then sold, albeit inadvertently, a part of the land that supported the parking lot. The defendant took no steps to review the accuracy of the property description in the deed and included no restrictions in the conveyance regarding the plaintiffs' use of the land. Therefore, to restrict the plaintiffs' use of the property under such circumstances would reward the defendant's own oversights and omissions in this transaction. We do not agree with the defendant's argument that the "natural" state of the land should be the condition of the property when subdivided and sold. There is virtually no support for such a proposition, and the most widely accepted authorities uniformly regard the "natural" condition of land to mean a condition "which is not in any way the result of human activity." Restatement (First) of Torts § 840 cmt. a (1939); *see also* Restatement (Second) of Torts § 817 cmt. c (1979) (stating that naturally necessary support "does not include the support needed because of the presence of artificial additions to or other artificial alterations in the supported land").

 It follows then, that the plaintiffs may remove the artificial additions (the sloped embankment) on their land subject to a duty of reasonable care to avoid unnecessary and foreseeable damage to the adjoining property. When the sloped embankment is removed by the plaintiffs, the defendant must take the necessary steps to support the parking lot and ensure that the fill dirt will not collapse onto the plaintiffs' property. If a retaining wall or similar structure is necessary for this purpose, then the defendant shall be responsible for the costs of constructing and maintaining such structure. *See Sime,* 7 N.W.2d at 327; *Carrion,* 614 S.W.2d at 917. However, should the plaintiffs excavate the natural portion of their land, thereby removing the naturally necessary support of the adjoining land, then the plaintiffs must replace this support and will be strictly liable for any damage. *Williams,* 396 S.W.2d at 99–100. Prior to this litigation, the plaintiffs gave the defendant thirty days advance notice of their planned excavation of the embankment. Under the circumstances of this case, we conclude that thirty days was a reasonable notice. However, the plaintiffs continue to have a duty to use reasonable care in effecting future changes to the land.

### IV. Conclusion

In summary, we hold that the plaintiffs owe a duty to the defendant to maintain the naturally necessary lateral support for the defendant's property in its natural state. The plaintiffs do not, however, have a duty to support artificial additions to the

defendant's property. Accordingly, the plaintiffs may remove the artificial additions on their own property subject only to a duty of reasonable care in doing so to avoid unnecessary damage to the adjoining property. In this case, the plaintiffs' providing of thirty days notice was reasonable. The plaintiffs may proceed with their excavation of the sloped embankment subject to a continued duty of exercising reasonable care in doing so. As long as the plaintiffs do not excavate the portion of the ground in its natural state, the defendant will be responsible for the costs of maintaining support of the current level of the defendant's land. The judgment of the Court of Appeals is affirmed.

The costs of this appeal are taxed to the appellant, RaceTrac Petroleum, Incorporated or its sureties for which execution may issue if necessary.