IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs November 21, 2007

JAMES CARSON

v.

WASTE CONNECTIONS OF TENNESSEE, INC.

Appeal from the Circuit Court for Shelby County
No. CT-006930-04    Robert L. Childers, Judge

No. W2006-02019-COA-R3-CV - Filed April 30, 2008

This is the second appeal of a damage award for negligence. The plaintiff owned a house with a detached carport. During a delivery, the defendant company's driver backed the delivery truck into one of the four columns supporting the carport structure, causing it to partially collapse. The plaintiff homeowner filed a lawsuit against the defendant company, alleging negligence and seeking damages. Liability was conceded and a trial proceeded on the amount of damages. There was disputed testimony on the condition of the roof structure of the carport before the defendant's driver hit it. After the trial, the trial court found that the carport did not have a "roof" at the time of the accident, and so it deducted the cost of the "roof" of the carport from the damage award. The defendant company appealed. In the first appeal, we found that the record did not clearly indicate the trial court's findings underlying the award of damages, and remanded the case for clarification. On remand, the trial court explained its damage award. The defendant company appeals again in light of the trial court's clarification of the record. Finding that the preponderance of the evidence does not weigh against the trial court's findings, we affirm.

Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., joined; W. FRANK CRAWFORD, J., not participating.

Pam Warnock Green, Memphis, Tennessee, for the Defendant/Appellant, Waste Connections of Tennessee, Inc.

Brett A. Schubert and Christine W. Stephens, Memphis, Tennessee, for the Plaintiff/Appellee, James Carson

**MEMORANDUM OPINION[1]**

This is the second appeal of this case. The parties and underlying facts are set forth at length in our prior Opinion. ***See Carson v. Waste Connections of Tenn., Inc.***, No. W2006-02019-COA-R3-CV, 2007 WL 1227470, at \*8 (Tenn. Ct. App. Apr. 27, 2007). Below is an excerpt from our prior Opinion detailing the events that culminated in this lawsuit:

Plaintiff/Appellee James Carson ("Carson"), a construction manager, owned certain real property located on Summer Avenue in Memphis, Tennessee. The property had a house and a detached carport. It is currently zoned and used as a commercial property.

In 2003, Carson agreed to allow Fred Burkhalter ("Burkhalter") and his family to live in the house on the property free of charge. In exchange, Burkhalter agreed to "clean-up" the house and lot. Burkhalter testified that he also agreed to perform certain repairs on the house and the detached carport.

As part of the "clean-up" process, Burkhalter rented two on-site dumpsters from Defendant/Appellant Waste Connections of Tennessee, Inc. ("Waste Connections"). On June 15, 2003, Waste Connections' employee, Gregory Walton ("Walton"), arrived on the property to deliver the second dumpster. During delivery, Walton inadvertently backed the delivery truck into one of the four brick columns supporting the structure of the detached carport. The column gave way, causing the carport structure to partially collapse. Burkhalter's work truck was parked in the carport at the time, and an I-beam from the carport structure fell on top of the truck.

Some time in June 2003, after the accident occurred, Carson stopped by the property and discovered the damaged carport. Shortly thereafter, he negotiated with Waste Connections regarding repair and replacement costs for the damaged carport. The parties were unable to resolve the matter.

*Id.* at \*1 (footnote omitted).

In July 2004, the homeowner, Plaintiff/Appellee Carson, filed a lawsuit against Defendant/Appellant Waste Connections in the General Sessions Court of Shelby County. The General Sessions judgment was appealed to the Circuit Court for Shelby County. The cause was set for a bench trial, which occurred on January 9, 2006. By this time, Carson had sold the property for

---

[1]**Rule 10. MEMORANDUM OPINION**

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

Tenn. Ct. App. R. 10 (Memorandum Opinions).

$240,000; the damaged carport was removed from the property after the accident and was not replaced.

Liability was conceded prior to trial. Consequently, the primary issue at trial was the amount of damages to be awarded to Carson. Thus, the testimony focused on the physical condition of the detached carport at the time of the accident, the fair market value of the carport, and the cost of restoring the carport to its former condition.

The tenant, Burkhalter, testified first. Burkhalter stated that the basic structure of the detached carport consisted of four columns and a roof, and that the roof was "pretty rotten." About a week before the accident, Burkhalter said, he had torn the roof off of the carport. Thus, according to Burkhalter's testimony, when the Waste Connections delivery truck backed into the carport, the carport consisted of four brick columns with steel I-beams running from column to column, i.e., a frame with no intact ceiling or roof.

Contrary to Burkhalter's testimony, plaintiff Carson asserted that the property and the carport were in excellent condition prior to the accident. Carson maintained that the carport was intact and needed only routine re-roofing at the time of the accident, and that the cost of doing so was approximately $2,000. When Carson arrived at the property after the accident, he saw that the whole "roof structure" had fallen on top of Burkhalter's work truck. After the accident, Carson said, the debris from the "roof structure" was "all over everywhere." Carson testified that he had sold the property for $240,000, and opined that, prior to the accident, the fair market value of the property was $265,000.

Following his testimony, Carson presented two estimates of the cost to reconstruct the entire carport, including the roof structure. The estimates were prepared after the damaged carport had been removed from the property.

The first estimate was done by Jackie Ward of Five Star Construction. The parties stipulated that Ward estimated the total cost of replacing the carport to be $24,214.06.

The second estimate was done by Floyd Newcomb ("Newcomb") of Rana Construction. Newcomb testified at trial. Newcomb's testimony and his itemized estimate are detailed in our Opinion in the first appeal of this case. *Carson*, 2007 WL 1227470, at \*4. He estimated a total cost to repair the carport structure of $20,044.20.

Waste Connections presented the testimony of Gregory Walton, the delivery truck driver. By the time of trial, Walton was no longer employed by Waste Connections. Walton described the carport structure prior to his accident as "nothing . . . but the four columns," i.e., the "columns and the frame around it." After the accident, he said, no debris other than the I-beam fell on top of the truck when the column collapsed, because "there wasn't anything on the roof."

At the conclusion of the testimony, the trial court issued an oral ruling. On the issue of whether the carport had a roof or a roof structure at the time of the accident, the trial court appeared to discredit the testimony of both Burkhalter and Carson, and appeared to credit Walton's testimony. It deducted $2,000 from the damage award for the cost of "putting on [a] new roof." On July 28, 2006, the trial court entered a final order awarding Carson a judgment in the amount of $20,000.

In its first appeal, Waste Connections asked this Court to review two issues: (1) whether the trial court erred in awarding damages to Carson after materially discounting his testimony, and (2), if the decision to award damages were affirmed, whether the trial court erred in its calculation of damages by finding that the carport did not have a "roof," but failing to deduct from the damage award the full cost of the "top/roof structure."

In the first appeal, we reviewed the record and found the trial court's ruling "to be internally inconsistent." **Carson**, 2007 WL 1227470, at *7. Specifically, we expressed concern that the trial court apparently found that the carport was without a roof on the day of the accident, but only deducted $2,000 from the cost of totally replacing the entire carport, including the roof and roof structure. The finding that the roof was entirely gone did not appear to comport with the $2,000 deduction from the damage award, because the cost of installing an entire roof was more than $2,000, according to Newcomb's itemized estimate. **Id.** Accordingly, we remanded the case to the trial court "and instruct[ed] . . . the trial court [to] clarify its findings of fact and its award of damages." **Id.** at *8.

On remand, on July 27, 2007, the trial court held a hearing to clarify its findings and the damage award. In its oral ruling, the trial court stated that, after a review of its trial notes and the witness testimony, it was apparent that the appellate court had misinterpreted the trial court's original ruling. In discussing Walton's testimony, the trial court stated:

> Mr. Walton's testimony was when you stood at an angle, you could see the sky through the roof. That does not mean that there was no roof whatsoever on the top of the carport. Now, again, I probably should have been clearer when I said roof because there's a difference between roofing, which is what I found, and the roof. I suppose I used that term because of Mr. Newcomb's estimate wherein Items No. 16 and 17 he says a three ply roof installed on top of the decking. The decking is a part of the roof obviously because the decking is the basis or the foundation for the roofing, for the shingles. There are rafters underneath the decking that have to hold the decking up and the shingles up, so I misspoke. I should have said roofing. *I should have said shingles rather than roof*.

The court further clarified its findings when it stated, "Again, I did not discredit Mr. Carson's or Mr. Burkhalter's testimony. The court found that there was little, if any, roofing, i.e. shingles, on the carport and there was still decking and rafters based on Burkhalter's testimony." The trial court also clarified its damages award: "What I did in this case was deduct Items 16 and 17 from Mr.

Newcomb's estimate . . . . [T]hose two figures are approximately $2,000, which is what I deducted from the total—the line item total of $20,044.20."

After clarifying its findings and the damage award, counsel for Waste Connections asked the trial court for a finding on Walton's credibility. The court responded, "I found that Mr. Walton was credible, I found that Mr. Carson was credible, and I found that Mr. Burkhalter was credible." After the trial court's ruling on remand, Waste Connections again appeals.

Because the case was tried without a jury, we review the trial court's findings of fact *de novo* upon the record with a presumption of correctness "unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d); **Union Carbide Corp. v. Huddleston**, 854 S.W.2d 87, 91 (Tenn. 1993). We review legal conclusions with no such presumption. **Campbell v. Fla. Steel Corp.**, 919 S.W.2d 26, 35 (Tenn. 1996). Also, "Where the trial judge has seen and heard the witnesses, especially if issues of credibility and weight to be given oral testimony are involved, considerable deference must be accorded those circumstances on review." **McCaleb v. Saturn Corp.**, 910 S.W.2d 412, 415 (Tenn. 1995).

In its brief in this appeal, Waste Connections' Statement of Issues for Review lists six issues. The issues actually discussed in the argument section of its brief, however, do not entirely correspond with the Statement of Issues. We glean from the overall discussion that Waste Connections' two main contentions are that (1) the evidence in the record preponderates against the trial court's finding that part of the roof was intact at the time of the accident, and (2) plaintiff Carson failed to present sufficient evidence to prove the damages element of his negligence claim. As in the first appeal, Carson asks this Court to deem Waste Connections' appeal frivolous and taken for delay under Tennessee Code Annotated § 27-1-122.

Waste Connections first argues that the trial court erred by finding that part of the roof—at least the decking and rafters—was in place at the time of the accident. The thrust of this argument is that the trial court erred in its express finding that all of the trial witnesses were credible. As it argued in the first appeal before remand, Waste Connections' contends that the trial court clearly credited Walton's testimony because it commented on his lack of motive to give untrue testimony, and that Carson's testimony directly contradicts Burkhalter's testimony. Relying on the premise, "*to be one thing is not to be the other*,"[2] Waste Connections again asks this Court to credit all of Walton's testimony and discredit all of the testimony of Burkhalter and Carson, contending that the inconsistencies cannot logically be reconciled.

We decline to do so. Trial courts are often confronted with testimony from one witness that contradicts testimony from another witness. ***See, e.g., Secrest v. Haynes***, No. M2002-01895-COA-R3-CV, 2003 WL 22071546, at *5-7 (Tenn. Ct. App. Sept. 8, 2003). This can be dealt with in a

---

[2]As authority for the proposition that "to be one thing is not to be the other," Waste Connections cites simply "Søren Kierkegaard, Philosopher."

number of ways, including finding portions of each witness's testimony to be accurate. **See, e.g., Roberts v. Ray**, 322 S.W.3d 435, 437-38 (Tenn. Ct. App. 1958).

Here, after remand, the trial court found expressly that, prior to the accident, the shingles on the roof were missing but the remainder of the roof structure, such as the rafters and decking, were largely intact. Giving due deference to the trial court's apparent determinations on the witnesses' credibility, we find that the evidence in the record does not preponderate against this finding of fact.

Waste Connections also argues that Carson did not meet his burden at trial of producing sufficient evidence to prove the damages element of his claim. It insists that the evidence in the record shows that Carson only lost one brick column and the I-beam that fell on Burkhalter's truck.

Carson seeks damages for injury to his real property. **See Fuller v. Orkin Exterminating Co., Inc.**, 545 S.W.2d 103, 108 (Tenn. Ct. App. 1975). The proper measure of such damages is the lesser of either (1) the difference in the "reasonable market value of the premises immediately prior to and immediately after the injury," or (2) the "cost of repairing the injury." **Id.** (citing **Williams v. S. Ry. Co.**, 396 S.W.2d 98 (Tenn. Ct. App. 1965)).

At trial, Carson testified that he sold the property on which the carport was located for $240,000, but that before the accident, the property was worth $265,000. This is evidence of the fair market value of his property before and after the accident, a difference of approximately $25,000. On remand, the trial court indicated that it relied on Newcomb's testimony and estimate of the cost to reconstruct the carport, i.e., the cost of repairing the damage. Newcomb estimated that the cost of repair would be $20,044.20 and Ward estimated it to be $24,214.06. This showed that the cost of repair was less than the difference in fair market value. Based on its finding on the condition of the carport structure prior to the accident, the trial court found that Waste Connections' negligence caused injury to Carson's property in the amount of $20,000. This damage award is well within the range of the evidence of the cost of repair. Therefore, we affirm the trial court's finding and its award of damages.

Finally, Carson requests that we find Waste Connections' appeal to be "frivolous or taken solely for delay," under Tennessee Code Annotated § 27-1-122. Carson asks for an award of damages against Waste Connections in the amount of his costs and attorneys' fees on appeal. These requests are denied.

The decision of the trial court is affirmed. Costs of this appeal are to be taxed to the Appellant, Waste Connections of Tennessee, Inc, and its surety, for which execution may issue if necessary.

_____
HOLLY M. KIRBY, JUDGE